# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

IRADELL WRIGHT, as the )
Administrator of the Estate of James )
Edward Wright, et al., )
)
     Plaintiffs, )
)   Case No. 2:18-cv-01897-SGC
v. )
)
REGIONS BANK, et al., )
)
     Defendants. )

## MEMORANDUM OPINION & ORDER[1]

This action is maintained by Iradell Wright, proceeding individually and as the Administrator of the Estate of James Edward Wright ("Mrs. Wright"). The defendants are Regions Financial Corporation ("Regions") and Metropolitan Life Insurance Company ("MetLife").[2] Pending before the undersigned are six motions filed by Regions and MetLife. (Docs. 24, 34, 39-42). The undersigned addresses each motion in this memorandum opinion and order.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. 13, 35).

[2] While Mrs. Wright identifies the defendant which sponsored the plan as Regions Bank, that defendant states it is correctly identified as Regions Financial Corporation. (Doc. 24 at p. 1). The Clerk is **DIRECTED** to amend the docket sheet to reflect that the defendant is Regions Financial Corporation, not Regions Bank.

# I.     Procedural History

Mrs. Wright commenced this action in the Circuit Court of Jefferson County, Alabama, asserting state law claims based on the denial of benefits allegedly due under two life insurance policies.  In her original complaint, Mrs. Wright named Regions as the sole defendant.  Regions removed the action to this district court on the grounds Mrs. Wright's state law claims are completely preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), thereby creating federal subject matter jurisdiction.  (Doc. 1). The action was stayed on January 3, 2019, for Mrs. Wright to exhaust her administrative remedies.  (Doc. 12).  Mrs. Wright filed an amended complaint on February 10, 2020, adding MetLife as a defendant, and a second amended complaint on April 20, 2020, adding a claim to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (the "ERISA claim").  (Docs. 21, 37).  The second amended complaint incorporates by reference the allegations and claims included in the first amended complaint.

Presently pending are (1) two motions to dismiss the first amended complaint, one filed by each defendant; (2) two motions to dismiss Counts I – IV and dismiss or stay Count V of the second amended complaint, one filed by each defendant; (3) a motion to stay the deadline for submission of the report required by Rule 26(f) of the *Federal Rules of Civil Procedure*, filed by Regions; and (4) a motion to

supplement its motion to dismiss and/or stay counts asserted in the second amended complaint, filed by MetLife. (Docs. 24, 34, 39-42).[3] Mrs. Wright has responded to the motions to dismiss the first amended complaint. (Docs. 27, 38). She has not responded to the motions to dismiss and/or stay counts asserted in the second amended complaint, the motion to stay the Rule 26(f) deadline, or the motion to supplement.

MetLife's motion to supplement its motion to dismiss and/or stay counts asserted in the second amended complaint is due to be granted to the extent the undersigned will consider the information provided in the supplement in ruling on the underlying motion. Additionally, for the reasons discussed below, the defendants' motions directed to the first and second amended complaints are due to be granted in part and denied without prejudice in part, and Regions' motion to stay the Rule 26(f) deadline is due to be granted.

---

[3] Technically, Regions filed a motion for joinder in MetLife's motion to dismiss and/or stay counts asserted in the second amended complaint. (Doc. 41). The undersigned refers to the motion as a motion to dismiss for ease of reference. Additionally, the undersigned notes that typically the last-filed version of a complaint is the operative pleading and the filing of an amended complaint moots a motion to dismiss an earlier version of the complaint. However, given Mrs. Wright's second amended complaint incorporates by reference the allegations of the first amended complaint and given the motions filed by the defendants with respect to the second amended complaint incorporate by reference arguments included in their motions to dismiss the first amended complaint, the undersigned considers the first amended complaint, the second amended complaint, and all dispositive motions filed by the defendants in determining how this action should proceed.

## II.    Mrs. Wright's Factual Allegations and Claims

Iradell Wright and James Edward Wright were husband and wife.  (Doc. 21 at ¶ 6).  Mr. Wright passed away on December 5, 2013.  (*Id.*).  At the time of Mr. Wright's death, both spouses were employed by Regions.  (*Id.*).  As employees of Regions, each spouse took out one or more life insurance policies, and each spouse paid the monthly premiums due to maintain coverage.  (*Id.* at ¶¶ 7-9).  Mrs. Wright was the named beneficiary of the two policies insuring Mr. Wright's life.  (Doc. 37 at ¶ 45).  Mrs. Wright concedes these two policies are a component of an employee benefit plan regulated by ERISA.  (*Id.* at ¶ 46).  MetLife issued and administered the policies, and Regions was the sponsor of the plan.  (Doc. 1 at ¶ 6; Doc. 37 at ¶ 44).  As the plan administrator, MetLife has discretionary authority to interpret the plan and determine eligibility and entitlement to benefits under the plan.  (Doc. 1-2 at p. 55).[4]

When Mr. Wright fell ill on November 12, 2013, Mrs. Wright contacted Regions' Human Resources Department and was advised the two policies insuring Mr. Wright's life would be honored in the event of his death.  (Doc. 21 at ¶¶  1, 10-

---

[4] The undersigned notes consideration of the contents of the plan is not improper at this stage of the litigation.  While a court typically is limited to reviewing what is within the four corners of a complaint on a motion to dismiss, the general rule yields where the complaint refers to a document that is central to a claim and undisputed, meaning its authenticity is not challenged.  *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).  Mrs. Wright's second amended complaint refers to the plan, which is at the heart of this action, and she does not dispute the authenticity of the plan.

11, 21).  Mrs. Wright contacted Regions' Human Resources Department again on December 12, 2013, after Mr. Wright's death.  (*Id.* at ¶ 12).  Consistent with the earlier conversation, an employee in the Human Resources Department by the name of Jamie Ray advised Mrs. Wright that she would be able to recover survivor's benefits under the policies insuring Mr. Wright's life.  (*Id.*).  However, when Mrs. Wright made further attempts to collect on the policies, Ray informed her that she was ineligible to recover those benefits because both she and her husband were Regions' employees.  (*Id.* at ¶¶ 12, 17).[5]  This was news to Mrs. Wright.  (*Id.* at ¶ 16).

Based on these factual allegations, Mrs. Wright asserts a claim seeking a declaratory judgment the defendants acted unconscionably by refusing to pay out benefits under the policies insuring Mr. Wright's life.  (Doc. 21 at Count I).  She also asserts claims for breach of contract, fraud, and bad faith failure to pay insurance benefits, seeking to recover compensatory and punitive damages, attorney's fees, and costs.  (*Id.* at ¶ 1, Counts II – IV).[6]  Finally, Mrs. Wright asserts a claim to recover benefits pursuant to § 1132(a)(1)(B), which the undersigned refers to as the "ERISA claim."  (Doc. 37 at Count V).

---

[5] Ray also informed Mrs. Wright the premiums paid to maintain coverage under the policies would be refunded.  (Doc. 21 at ¶¶ 12, 17).

[6] Mrs. Wright appears to assert claims for both fraudulent suppression and fraudulent misrepresentation.  (*See* Doc. 21 at ¶¶ 18, 29).

### III.   Status of Administrative Review Process

The employee benefit plan encompassing the two life insurance policies at issue includes a process for submitting a claim for benefits and appealing an initial determination of a claim.  (Doc. 1-2 at pp. 54-55).  The second amended complaint, the defendants' pending motions, and Mrs. Wright's responses to those motions collectively make clear Mrs. Wright filed multiple claims with MetLife on July 31, 2019, seeking to recover benefits allegedly due under the two policies insuring Mr. Wright's life.  (Doc 24 at p. 14; Doc. 37 at ¶ 50; Doc. 40 at p. 4; Doc. 42 at p. 1).  MetLife issued initial determinations on all but one claim on April 3, 2020, and notified Mrs. Wright of her right to administratively appeal the determinations within 60 days.  (Doc. 37 at ¶ 51; Doc. 40 at p. 4; Doc. 42 at p. 1).  These determinations were not acceptable to Mrs. Wright, who asserted that as of April 20, 2020, she "[was] exhausting all administrative remedies to no avail" and "[would] continue to exhaust any and all administrative remedies."  (Doc. 37 at ¶¶ 48, 51; Doc. 38 at pp. 4-6).[7]  MetLife issued an initial determination on Mrs. Wright's remaining claim on May 14, 2020, and notified Mrs. Wright of her right to administratively appeal the determination within 60 days.  (Doc. 42 at pp. 1-2).

---

[7] The second amended complaint is not clear as to the substance of the initial determinations.  (*See* Doc. 37 at ¶ 51).

## IV.   Standard of Review

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*.  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## V.    Discussion

The defendants argue in their motions directed to the first and second amended complaints that (1) Mrs. Wright's state law claims should be dismissed because they are completely and defensively preempted by ERISA; (2) Mrs. Wright's ERISA claim should be dismissed because she has failed to exhaust her administrative remedies or, alternatively, stayed until such time as she satisfies the exhaustion requirement; and (3) even if the ERISA claim is properly before the court, Mrs. Wright cannot recover extra-contractual or punitive damages.  In her responsive submissions, Mrs. Wright makes no substantive argument her state law claims are not preempted or that she should be able to recover extra-contractual and punitive damages.

### A.    State Law Claims

ERISA creates a comprehensive regulatory scheme for certain employee benefit plans, as well as a civil enforcement scheme for those plans.  *Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1295 (11th Cir. 2001).  It is "one of only a few federal statutes" under which two types of preemption may arise: complete preemption (also known as super preemption) and defensive preemption (also know

as conflict preemption).  *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343-44 (11th Cir. 2009) ("*Anthem*").

"Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim."  *Id.* at 1343; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining the well-pleaded complaint rule provides "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," such that plaintiff "may avoid federal jurisdiction by exclusive reliance on state law").  In the ERISA context, this type of preemption derives from § 1132, the statute's civil enforcement provision, which carries the "extraordinary" preemptive force described above.  *Anthem*, 591 F.3d at 1344 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).  By operation of the doctrine of complete preemption, an action purporting to assert only state law claims may be removable to federal court.  *Id.*

While complete preemption is jurisdictional in nature, defensive preemption is substantive in nature, effectively serving as an affirmative defense.  *Id.*  In the ERISA context, it derives from 29 U.S.C. § 1144(a), the statute's express preemption clause, which provides that the terms of the statute supersede all state laws that "relate to" an ERISA-governed employee benefit plan.  *Id.*  Defensive preemption

9

requires dismissal of such claims. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999).

Apart from being different in nature and effect, complete preemption and defensive preemption are not coextensive. *Anthem*, 591 F.3d at 1344. Complete preemption is narrower than defensive preemption. *Id.* Consequently, claims that are completely preempted are defensively preempted, but claims that are defensively preempted are not necessarily completely preempted. *Id.*; *Butero*, 174 F.3d at 1215; *Cotton v. Mass Mut. Life Ins. Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005).

As stated, the defendants argue Mrs. Wright's state law claims are both completely preempted and defensively preempted. The undersigned addresses the complete preemption argument with respect to Mrs. Wright's breach of contract claim to make clear on the record this district court has federal subject matter jurisdiction over this action.[8] The undersigned declines to address whether Mrs. Wright's other state law claims meet the standard for complete preemption, which

---

[8] Reliance on the ERISA claim added after after this action was removed from the Circuit Court of Jefferson County, Alabama, to establish federal subject matter jurisdiction would be imprudent. At least as a general rule, "the district court must look at the case at the time of removal to determine whether it has subject-matter jurisdiction." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1244 (11th Cir. 2007). Thus, a federal claim added by amendment typically will not provide a basis for exercising federal subject matter jurisdiction. *See Lamm v. Bekins Van Lines Co.*, 139 F. Supp. 2d 1300, 1315 (M.D. Ala. 2001) (holding federal claim that plaintiffs sought to add by amendment after removal did not confer federal subject matter jurisdiction on district court because of the general rule set out above); *cf. Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002) (holding district court did not lose federal subject matter jurisdiction when plaintiff amended complaint post-removal to drop federal claim).

is "more exacting" than the standard for defensive preemption, because complete preemption of her breach of contract claim vests this court with federal subject matter jurisdiction over her other state law claims, even if those claims are not completely preempted, and it is clear those claims are at least defensively preempted. *See Butero*, 174 F.3d at 1215 (holding district court had federal subject matter jurisdiction over claims that escaped complete preemption because they were joined with claims that were completely preempted) (citing 28 U.S.C. § 1441(c)); *Anthem*, 591 F.3d at 1353 (same); *Horn v. Alabama Power Co.*, 2016 WL 1248923, at *6 (M.D. Ala. Mar. 30, 2016) (noting it was not necessary to determine whether fraud claim met "more exacting" standard for complete preemption because completely preempted breach of fiduciary duty claim vested court with federal subject matter jurisdiction over fraud claim and it was apparent fraud claim was at least defensively preempted).

### 1.    Complete Preemption of Breach of Contract Claim

The test for complete preemption under ERISA was established by the United States Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).  The *Davila* test requires two inquires: (1) whether a plaintiff could have brought her claim pursuant to § 1132, and (2) whether a defendant's actions implicate a legal duty independent of ERISA.  *Davila*, 542 U.S. at 210; *see also Anthem*, 591 F.3d at 1345 (applying *Davila* test).  If the answer to the first question is in the affirmative

11

and the answer to the second question is in the negative, complete preemption applies. *Davila*, 542 U.S. at 210.

The first inquiry depends in turn on (1) whether the claim falls within the scope of § 1132 and (2) whether the plaintiff has standing to sue under ERISA. *Anthem*, 591 F.3d at 1350 (interpreting *Davila*).  In determining whether a claim falls within the scope of § 1132, some courts in this judicial circuit have considered the factors that comprised the test for complete preemption prior to *Davila*, as set out in *Butero*.  *See, e.g., Gowan v. Assurity Life Ins. Co.*, 2013 WL 1192580, at *3 (S.D. Ga. Mar. 22, 2013); *Dye v. Hartford Life & Acc. Co.*, 2014 WL 1379246, at *3 n.9 (M.D. Ga. Apr. 8, 2014).  These factors include (1) whether there is a relevant ERISA plan, (2) whether the defendants are ERISA entities, and (3) whether the plaintiff seeks compensatory relief akin to that available under § 1132.  *Butero*, 174 F.3d at 1212.[9]  In an unpublished opinion, the Eleventh Circuit has considered at least the first factor.  *See Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 597-98 (11th Cir. 2019); *see also Knox v. American Professional Assocs., LLC*, 2020 WL 6930447, at *2 (N.D. Ga. May 27, 2020) (citing *Garcon* for consideration of first *Butero* factor).

---

[9] The fourth *Butero* factor – whether the plaintiff has standing to sue – is reflected in the *Davila* factors.

To ensure a thorough analysis of complete preemption, the undersigned considers both the *Davila* factors and the *Butero* factors. Those factors, synthesized, are as follows: (1) whether there is a relevant ERISA plan, (2) whether the defendants are ERISA entities, (3) whether the plaintiff has standing to sue under ERISA, (4) whether the plaintiff seeks compensatory relief akin to that available under § 1132, and (5) whether the defendants' actions implicate a legal duty independent of ERISA.

An employee benefit plan is statutorily defined as (1) any plan, fund, or program (2) established or maintained (3) by an employer (4) for the purpose of providing benefits (5) to participants or their beneficiaries. *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (citing 29 U.S.C. § 1002(1)). Based on the facts alleged in Regions' notice of removal and on the copy of the plan document attached to that notice, the undersigned is satisfied the life insurance policies at issue are a component of a plan that meets all five requirements and, thus, qualifies as an employee benefit plan subject to ERISA.

Regions, as the employer that sponsored the plan, and MetLife, as the plan administrator with discretionary authority to interpret the plan and determine eligibility and entitlement to benefits under the plan, qualify as ERISA entities. *See Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 722 (11th Cir. 1996) ("ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under

the plan."); 29 U.S.C. § 1002(21)(A) (defining a "plan fiduciary" as one who exercises discretionary authority or responsibility with respect to management or administration of the plan); *Butero*, 174 F.3d at 1213 (noting insurer that could control determination of rights and payment of benefits under plan qualified as ERISA entity). Mrs. Wright, as the named beneficiary with at least the potential to recover benefits under the life insurance policies at issue, has standing to sue under ERISA. *Gables Ins. Recovery, Inc. v. Blue Cross and Blue Shield of Florida, Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) ("Aside from the Secretary of Labor, ERISA permits only two categories of persons to sue for benefits: plan beneficiaries and plan participants.") (citing 29 U.S.C. 1132(a)(1)); *Anthem*, 591 F.3d at 1353 ("[A]ll one needs for standing under ERISA is a colorable claim for benefits . . . .").

Through her breach of contract claim, Mrs. Wright seeks compensatory relief akin to that available under § 1132. Mrs. Wright's breach of contract claim is based on the defendants' alleged wrongful denial of benefits under life insurance policies encompassed by an ERISA-governed employee benefit plan – that is, their alleged breach of the plan – and for the alleged breach, Mrs. Wright seeks to recover the full amount of the benefits she believes are due under the policies. *See Gables Ins. Recovery*, 813 F.3d at 1338 (holding state law claims, including one for breach of contract, based on alleged wrongful denial of coverage under ERISA-governed employee benefit plan fell within scope of § 1132).

Finally, the defendants' alleged breach did not implicate a legal duty independent of ERISA.  *See Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010) (holding breach of contract claims did not implicate legal duty independent of ERISA because "the content of the claims necessarily require[d] the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans"); *Dye*, 2014 WL 1379246, at *4 (holding breach of contract claim based on alleged erroneous termination of benefits necessarily required inquiry into content of plan and, thus, was not premised on legal duty independent of ERISA); *Knox*, 2020 WL 6930447, at *3 (holding breach of contract claim based on denial of plan benefits was not predicated on legal duty independent of ERISA); *Woods v. Radiation Therapy Servs., Inc.*, 2017 WL 727766, at *9 (M.D. Fla. Feb. 24, 2017) (rejecting argument defendant's alleged breach of contractual provisions contained in plan violated legal duty that existed independently of ERISA).  Therefore, Mrs. Wright's breach of contract claim is completely preempted by ERISA and serves as a basis for this district court's exercise of federal subject matter jurisdiction over this action.  Moreover, because the claim is completely preempted by ERISA, it is also defensively preempted by ERISA, such that it is subject to dismissal.  *See Butero*, 174 F.3d at 1215 (holding claims that were completely preempted were necessarily defensively preempted and

15

due to be dismissed); *S. Fulton Dialysis, LLC v. Caldwell*, 428 F. Supp. 3d 1346, 1355 (N.D. Ga. 2019) (same).

### 2.    Defensive Preemption of Remaining State Law Claims

Whether a federal statute defensively preempts a state statute turns on congressional intent. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).  In ascertaining congressional intent, courts first look to the text of a federal preemption provision, giving effect to its plain language, "and move on, as need be," to the structure and purpose of the statute as a whole. *Id.* at 97; *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("*New York Blues*"); *see also Morstein*, 93 F.3d at 718 (noting ERISA does not define the phrase "relate to").  Applying these familiar canons of statutory construction, the Supreme Court in *Shaw* held "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96-97.  However, the Court subsequently acknowledged its "attempt to construe the phrase 'relate to'" in *Shaw* is of limited utility, given connections (like relations) "stop nowhere" and a construction of the phrase pursuant to which preemption "would never run its course" "would be to read Congress's words of limitation as a mere sham."  514 U.S. at 655-56 (internal quotation marks omitted).

Given the "unhelpful" text of the statute and the "frustrating difficulty of defining its key term," the Court in *New York Blues* "look[ed] instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656. "The legislative history suggests that the sweep of ERISA preemption is broad, applying well beyond those subjects covered by ERISA itself." *Jones v. LMR Intern., Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006). Thus, courts have found § 1144(a) to defensively preempt state law claims for bad faith failure to pay insurance benefits, fraud, and declaratory judgment that are based on the denial of benefits under an ERISA-governed employee benefit plan.[10]

---

[10] *See, e.g., Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1301 (11th Cir. 2001) (holding claim for bad faith denial of insurance benefits under Alabama law was defensively preempted by ERISA); *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) (holding fraud and misrepresentation claims were defensively preempted by ERISA); *Lewis v. Blue Cross and Blue Shield of Georgia*, 2015 WL 1475610, at *7 (M.D. Ala. Mar. 31, 2015) (holding fraudulent misrepresentation and suppression claims were "classic examples" of state law claims defensively preempted by ERISA); *Horn v. Alabama Power Co.*, 2016 WL 1248923, at *6-7 (M.D. Ala. Mar. 30, 2016) (holding fraudulent misrepresentation claim was defensively preempted by ERISA); *Woods v. American United Life Ins. Co.*, 2015 WL 7075284, at *5-6 (N.D. Ala. Nov. 13, 2015) (holding fraudulent misrepresentation and suppression claims were defensively preempted by ERISA); *Wiesenberg v. Paul Revere Life Ins. Co.*, 887 F. Supp. 1529, 1531 (S.D. Fla. 1995) (holding state law claim for declaratory judgment was defensively preempted by ERISA); *Florida Pediatric Critical Care, P.A. v. Vista Healthplan of South Florida, Inc.*, 2009 WL 2868400, at *4 (S.D. Fla. Sept. 3, 2009) (same). Courts have also found § 1144(a) to defensively preempt breach of contract claims that are based on the denial of benefits under an ERISA-governed employee benefit plan. *See, e.g., Williams v. Wright*, 927 F. 2d 1540, 1549-50 (11th Cir. 1991) ("[T]his court and others have unanimously held that [state law breach of contract claims] are [defensively] preempted by ERISA.").

Mrs. Wright's remaining state law claims are based on (1) her alleged entitlement to benefits under the two policies insuring Mr. Wright's life that are part of the plan the undersigned has determined to be subject to ERISA and (2) the defendants' alleged wrongful denial of those benefits.  Otherwise put, Mrs. Wright would have no claim for bad faith failure to pay insurance benefits, fraud, or declaratory judgment absent the ERISA plan, and each of these claims requires consideration of the plan.  For these reasons, and based on the authority cited above, Mrs. Wright's remaining state law claims "relate to" the plan and, thus, are defensively preempted by ERISA and due to be dismissed.[11]

### B.    ERISA Claim

The Eleventh Circuit has repeatedly held a plaintiff must exhaust her administrative remedies before asserting an ERISA claim in federal court.  *Variety Children's Hosp., Inc.*, 57 F.3d at 1042 (collecting cases); *see also Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (describing the exhaustion requirement as well-settled law in the Eleventh Circuit and articulating the rationales for the requirement); *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008) (noting the exhaustion requirement is clear law in the Eleventh Circuit).  The requirement is strictly enforced, "with certain caveats reserved for exceptional

---

[11] Because it is clear Mrs. Wright's bad faith and fraud claims are defensively preempted by ERISA, the undersigned declines to address the defendants' alternative arguments these claims are time-barred and insufficiently pleaded.

circumstances" – namely, "when resort to administrative remedies would be futile or the remedy inadequate" or "where a claimant is denied meaningful access to the administrative review scheme in place." *Perrino*, 209 F.3d at 1315-16 (internal quotation marks and citation omitted); *see also Lanfear*, 536 F.3d at 1224-25 (suggesting the "futility" exception and the "denial of meaningful access" exception are coextensive to the extent "the futility exception protects participants who are denied meaningful access to administrative procedures"); *Amato v. Bernard*, 618 F.2d 559, 568-69 (9th Cir. 1980) (holding inadequacy exception to exhaustion requirement inapplicable where administrative appeals procedures were clearly defined in ERISA-governed pension plan, simple, intended to work quickly and could result in claimant receiving all relief to which he was entitled under plan, and there was no evidence that would call into doubt whether procedures worked in the way intended).[12]   Where a plaintiff fails to plead or recite facts showing she has exhausted her administrative remedies, her ERISA claim is subject to dismissal, and it is not sufficient for a plaintiff merely to allege she has complied with "all conditions precedent" or that "such conditions have been waived or excused." *Variety Children's Hosp., Inc.*, 57 F.3d at 1042, 1042 n.2.  "The decision of a district

---

[12] The Eleventh Circuit cited *Amato* favorably in *Curry v. Cont. Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir. 1990).  The Eleventh Circuit later abrogated its decision in *Curry* to the extent that decision addressed ERISA's attorney fee provision.  *See Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314-15 (11th Cir. 2001).

court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision," reviewed "only for a *clear* abuse of discretion." *Perrino*, 209 F.3d at 1315.

As of May 20, 2020, the record did not show Mrs. Wright had exhausted her administrative remedies. Although she had filed claims with MetLife and MetLife had issued initial determinations on those claims, the record is silent as to whether Mrs. Wright invoked the appeals process provided for under the plan and, if so, the status of that process or the outcome of the appeal(s). However, given the lapse of time since the last update regarding the status of Mrs. Wright's claims in the administrative review process, rather than grant the defendants' request that Mrs. Wright's ERISA claim be dismissed for lack of exhaustion or, alternatively, stayed pending Mrs. Wright's exhaustion of administrative remedies, the undersigned denies the request without prejudice. The parties will be directed to file a joint submission regarding the status of Mrs. Wright's claims in the administrative review process. To the extent that process remains pending, the defendants may renew their request to dismiss or stay Mrs. Wright's ERISA claim by filing a brief joint motion that incorporates by reference the arguments made in their prior submissions.

The undersigned notes Mrs. Wright has not made the showing necessary to excuse the exhaustion requirement. Her assertions that as of April 20, 2020, she "[was] exhausting all administrative remedies to no avail" and "[would] continue to

exhaust any and all administrative remedies" merely indicate that as of April 20, 2020, she was in the midst of the administrative review process and, thus far, unsatisfied with the initial determinations issued by MetLife. The assertions are devoid of *facts* that would show continued efforts to comply with the process would be futile or that the remedy provided by the process would be inadequate.

The undersigned also notes Mrs. Wright's apparent reliance on *Swint v. Protective Life Ins. Co.*, 779 F. Supp. 532 (S.D. Ala. 1991), to support an argument she should not be required to exhaust her administrative remedies further is misplaced. In *Swint*, the court held the defendant had waived its right to deny coverage under an ERISA-governed medical and life group insurance policy by leading the insured to believe he was protected under the policy. 779 F. Supp. at 560. The case addressed the substantive merits of an ERISA claim. It had nothing to say about the exhaustion requirement for an ERISA claim and, thus, is not helpful to Mrs. Wright at this stage of the litigation.

## C.    Request for Extra-contractual and Punitive Damages

Extra-contractual damages (such as compensatory damages) and punitive damages are not recoverable under § 1132(a)(1)(B). *See Bishop v. Osborn Transp., Inc.*, 838 F.2d 1173, 1173-74 (11th Cir. 1988); *Godfrey v. BellSouth Telecomm., Inc.*, 89 F.3d 755, 761 (11th Cir. 1996). Therefore, even if Mrs. Wright's ERISA claim is properly before the court, her request for compensatory and punitive

damages is due to be dismissed.  *See Wood*, 2015 WL 7075284, at *6-7 (dismissing demands for extra-contractual and punitive damages).

## VI.    Conclusion

MetLife's motion to supplement its motion to dismiss and/or stay counts asserted in the second amended complaint (Doc. 42) is **GRANTED** to the extent the undersigned has considered the information provided in the supplement in ruling on the underlying motion.  Additionally, for the foregoing reasons the defendants' motions directed to the first and second amended complaints (Docs. 24, 34, 40, 41) are **GRANTED** to the extent Mrs. Wright's state law claims are **DISMISSED WITH PREJUDICE** as preempted by ERISA and her request for compensatory and punitive damages are **DISMISSED**.  The motions are **DENIED WITHOUT PREJUDICE** with respect to Mrs. Wright's ERISA claim.   The parties are **DIRECTED** to file a joint submission regarding the status of Mrs. Wright's claims in MetLife's administrative review process within fourteen (14) calendar days from the entry date of this order.  Finally, given the status of Mrs. Wright's ERISA claim is unclear, Regions' motion to stay the Rule 26(f) deadline (Doc. 39), which is unopposed, is **GRANTED**.

**DONE** this 25th day of March, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE